**[Cite as *State v. Schroyer*, 2012-Ohio-4978.]**

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                           :

     Plaintiff-Appellee               :        C.A. CASE NOS. 25108 and 25109

v.                                      :        T.C.  NO.  09CR3423  and  10CR820

MICHAEL SCHROYER                        :         (Criminal appeal from
                                       Common Pleas Court)

     Defendant-Appellant              :

                                                     :

. . . . . . . . . .

# **O P I N I O N**

Rendered on the _____26th_____ day of _____October_____, 2012.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JEREMIAH DENSLOW, Atty. Reg. No. 0074784, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}    This matter is before the Court on the Notices of Appeal of Michael Schroyer, filed March 27, 2012, pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).   Counsel for Schroyer asserts that he, "after diligently and conscientiously investigating the court record in the case, and researching potential legal issues, has determined that there is no merit to an appeal" herein.   This Court notified Schroyer of his counsel's submission, and invited him to file a pro se brief assigning any errors for this Court's review within 60 days.   Schroyer did not file a response.   Pursuant to our responsibilities under *Anders*, we have undertaken an independent review of the record on appeal, and having done so, we conclude, as did defense counsel, that there are no arguably meritorious issues for appellate review.   The judgment of conviction is affirmed.

{¶ 2}    The record reflects that on June 8, 2010, Schroyer entered pleas of guilty to one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree, in case no. 2009 CR 03423, and one count of breaking and entering, in violation of R.C. 2911.13(A), a felony of the fifth degree, in case no. 2010 CR 00820.   In exchange for his pleas, in case no. 2009 CR 03423, one count of aggravated robbery was dismissed, and in case no. 2010 CR 00820, one count of possessing criminal tools, and   one count of criminal damaging, were also dismissed.   The trial court agreed to impose a negotiated sentence of three to five years, and Schroyer agreed to cooperate with the Trotwood Police Department in solving several other incidents of breaking and entering   of which he had knowledge.

{¶ 3}    The record before us reflects a thorough Crim.R. 11 colloquy, in the course of which Schroyer clearly stated that he completed tenth grade; that he understood the nature of the charges against him; that he was satisfied with defense counsel's representation; that he understood the plea agreement as well as the rights he gave up by entering his pleas; and

that he entered his pleas voluntarily. The trial court specifically asked Schroyer if he was able "to read and understand" his plea forms, and he stated that he could do so. Before accepting his pleas, the court advised Schroyer to "go over the plea form one last time." After his pleas were accepted, Schroyer was released on a COR bond, and the court set the matter for sentencing on July 6, 2010.

{¶ 4} On that date, Schroyer failed to appear, and he filed a motion to withdraw his guilty pleas on February 7, 2011, and substitute counsel filed an amended motion to withdraw his pleas on June 13, 2011. In his amended motion, Schroyer asserted that he is unable to read, has a learning disability that prevented him from comprehending the plea colloquy, and that he "was wholly innocent of the felonious assault charge." A hearing on the motion commenced on June 14, 2011. At the start of the hearing, the court indicated as follows: "We were off the record. We had some discussions. There was an issue of the parties not being ready to proceed." In response to the court's subsequent inquiry, defense counsel indicated that one of two eyewitnesses to the felonious assault failed to appear at the hearing. The court declined to continue the hearing.

{¶ 5} During direct examination, Schroyer indicated that he has trouble reading, and that he "always said I can read when I can't." Schroyer further expressed dissatisfaction with defense counsel's representation, asserting that he wanted to take the matter to trial, but that defense counsel failed to contact his witnesses. Regarding the felonious assault charge, Schroyer described the events that resulted in the charge without objection, and he asserted that he acted in self-defense. At the close of Schroyer's evidence, the prosecutor requested a sidebar, during which she indicated to the court that she "didn't

know that the nature of the hearing would be [Schroyer's] ability to read and his learning disabilities," and further that she was covering the hearing for another attorney. The court continued the hearing until June 20, 2011.

{¶ 6} Schroyer failed to appear on June 20, 2011, and the record indicates that he was arrested on August 30, 2011. On November 15, 2011, the hearing on Schroyer's motion to withdraw his pleas resumed with new counsel representing Schroyer. On cross-examination, Schroyer acknowledged that he indicated to the court at the plea hearing that he understood and agreed with the plea agreement, but that he failed to appear for sentencing because he later realized that his plea form indicated a possible maximum sentence of eight years for the felonious assault. When the State began to question Schroyer about the events giving rise to the felonious assault charge, defense counsel objected "to the questioning as being irrelevant to this proceeding," and the following exchange occurred:

MR. GRAMZA: We are withdrawing the issue of actual innocence for this proceeding, Your Honor.

* * *

THE COURT: And I think because we're in a strange situation in that it has taken us numerous months to finish this hearing. Some of the problems in finishing this hearing are brought on by the Defense. And the Defendant. The Court can look at those issues when the time comes. But I would rather err against the State if there is any error in not having you deal with the issues now that it is on the record that innocence is not part of this hearing. And just not create any issue.

MS. MADZEY: Okay.

{¶ 7}     On recross-examination, Schroyer again indicated that at the time of the plea he understood that pursuant to the plea agreement, he would be subject to a sentence within the range of three to five years, but that after he was arrested for failing to appear, he believed that he was subject to an eight year sentence and accordingly filed his motion to withdraw his pleas.

{¶ 8}     The following exchange occurred between Schroyer and the court:

THE COURT: * * * You were in jail when the plea took place, were you not?

THE WITNESS: Yes.

THE COURT: All right.  And you understood that the Court gave you a COR bond to get your affairs in order, right?

THE WITNESS: Yes.

THE COURT: And you understood that you needed to appear back on the date of sentencing or all bets were off?

THE WITNESS: No, I didn't understand that part.

THE COURT: All right.  And if the record says you said yes, what does that mean?   That you lied?

THE WITNESS:    * * * no, the record states three to five and I can give you no less than three and no more than five and that was the end of it to my understanding.

THE COURT: No, sir, you're playing.  No, don't play with me.  I'm

making a decision, I told you that if you returned on the day that you were supposed to for sentencing, you would receive the three to five years.

* * *

THE COURT: Do you agree?

THE WITNESS: I don't recall. I don't remember that.

THE COURT: If the record says yes, what does that mean?

THE WITNESS: That means you said it.

THE COURT: Does that mean you understood or you agreed to it?

THE WITNESS: It means I understood it or I agreed to it.

THE COURT: And the fact that you did not show means that you did not fulfill your part of the bargain.

THE WITNESS: Yes.

THE COURT: All right. And if the Court told you that if you did not come back, all bets were off, what does that mean to you?

THE WITNESS: I don't recall the Court saying that, no, I don't.

THE COURT: If the record says that, what does that mean?

THE WITNESS: That means all bets was off.

THE COURT: That means that the Court could have given you more than three to five years. * * *

{¶ 9} Finally, Chris Thompson, who initially represented Schroyer, testified that Schroyer provided a list of witnesses but then told him "to not contact them," because "he didn't trust his friends." Regarding the plea deal, Thompson stated Schroyer was "happy

with it," and that Schroyer only "objected to the robbery. That was his bone of contention. And frankly, I agreed with him. He admitted to striking the man. And as this case progressed, he protested the robbery. Did not protest the felonious assault." We note that the "Offender's Statement" section of the presentence investigation report provides: "* * * Michael Shroyer reported that he was the wrong place at the wrong time with some friends and ended up getting into a simple fight with a man. He stated that the guy got beat up because he said something that Mr. Schroyer didn't like. Mr. Schroyer stated that the guy swung first so he finished him off." The report further notes that the victim lost all sight in his right eye as a result of the assault.

{¶ 10} Thompson stated that Schroyer always had the option of going to trial, but that "once the robbery was done, trial wasn't really an issue." Thompson stated that Schroyer did not specifically tell him that he was unable to read, and that he did not learn of that possibility until after Schroyer "was arrested for being on the run for six months." Thompson testified:

> What happened was he got released from jail. I expected him to do a couple of things. One, to see me and two, to call the Trotwood Police Department. He dropped off the face of the earth. I heard nothing from him, his friends, his relatives. Until he was placed back in the County Jail. Then I got a flurry of telephone calls. And specifically they said that they wanted to withdraw his plea because I didn't do something and that he can't read.

Regarding the plea form, Thompson stated, "I recall that I did not read it to him verbatim

like I would had he told me at the time that he couldn't read."

{¶ 11} On cross-examination, Thompson stated that Schroyer never indicated to him that he felt pressured to accept the plea agreement or that he was dissatisfied with Thompson's representation. Thompson stated that he filed the motion to withdraw the pleas after Schroyer's arrest for failing to appear. Thompson stated that with first offenders or defendants with low IQs, he thoroughly goes over the plea form, and "then there's people like Mr. Schroyer who is a veteran of the system and has gone through this quite a few times and he expressed in our meetings that he knew what was going on. And he understood the process." Thompson stated that Schroyer never claimed self-defense.

{¶ 12} At the conclusion of the hearing, the court asked defense counsel, "what if anything does the length of time between the actual plea and the sentencing hearing, what effect if any should that have on the Court's decision?" Defense Counsel responded that the court remained bound by the original plea agreement and directed the court's attention to *State v. Layman,* 2d Dist. Montgomery No. 22307, 2008-Ohio-759 (reversing and remanding for imposition of the original negotiated sentence agreed to by the trial court, or for permission for Layman to withdraw his guilty plea, since the trial court did not warn Layman of the consequences of a failure to appear for sentencing, and then failed to honor the plea agreement when Layman failed to appear).

{¶ 13} In its January 31, 2012 decision overruling Schroyer's motion to withdraw his pleas, after reviewing Crim.R. 32.1, the court determined that Schroyer was represented by competent counsel when he entered his plea, that Schroyer was afforded a full Crim.11 hearing, as well as a complete and impartial hearing on his motion to withdraw his pleas,

and the court concluded that Schroyer's motion was based upon a change of heart. On February 27, 2012, the court sentenced Schroyer to four years for felonious assault and to 12 months for breaking and entering, to be served consecutively, for an aggregate term of five years.

{¶ 14} Crim.R. 32.1 provides: "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." A "presentence motion to withdraw a guilty plea should be freely given and liberally granted. Nevertheless, it must be recognized that a defendant does not have an absolute right to withdraw a plea prior to sentencing. Therefore, the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea." *State v. Xie,* 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). "A mere change of heart is insufficient for the withdrawal of a guilty plea, even when the motion to withdraw is made before sentencing." *State v. Hacker*, 2d Dist. Clark No. 2001-CA-85, 2002-Ohio-2920. Presentence motions to withdraw guilty pleas are within the trial court's discretion. *Xie*, *id.*

{¶ 15} Significantly, we note Schroyer's own statements suggest that he was motivated to withdraw his plea based upon an apprehension that he was facing eight years. This would have come as no surprise based upon reading disability, if any, as he was advised of the maximum sentence orally. Such was the statutory maximum, but the court in fact adhered to the plea bargain and sentenced within the range of three to five years as initially agreed upon. Finally, at the time of the plea, Schroyer specifically indicated that he was able

to read and understand the plea forms.

{¶ 16}   Having undertaken a thorough and independent review of the entire record, pursuant to *Anders*, we agree with counsel's assessment that no meritorious claim exists upon which to predicate an appeal.   Accordingly, the judgment of the trial court is affirmed.

. . . . . . . . . .

FAIN, J. and HALL, J., concur.

Copies mailed to:

Carley J. Ingram
Jeremiah Denslow
Michael Schroyer
Hon. Frances E. McGee